IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No.   08-374 |
| | ) | |
| ERIC ALFORD, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

I.   **Introduction**

Pending before the court are: (1) a pro se motion for compassionate release filed by defendant Eric Alford ("Alford") (ECF No. 1298); and (2) a motion for compassionate release by appointed counsel on behalf of Alford (ECF No. 1333). The motions were primarily based upon his risk of serious harm if he was infected by the COVID-19 virus. Those motions are now largely moot because, while the motions were being briefed, Alford contracted the COVID-19 virus. The government filed a response (ECF No. 1342). Counsel for Alford and the government conferred and submitted a Joint Notice regarding supplemental briefing to address the changed circumstances (ECF No. 1349). The parties agreed that Alford would file a reply and supplemental new matter by March 12, 2021, and that the government would have 21 days to file a response thereto.

Alford's counsel filed his reply and supplemental information (ECF No. 1351), and attached a supplemental report from Michael Smith, M.D., M.P.H. ("Dr. Smith") (ECF No. 1351-1). Although docketed as a reply brief, the court will grant Alford's request (*see* ECF No. 1351 at 4) to construe the filing as a supplemental motion for compassionate release. The government filed a response and surreply on April 2, 2021 (ECF No. 1353). Alford's requests

for compassionate release are now fully briefed and ripe for disposition.  The court notes the numerous letters of recommendation and support received from Alford's family and friends.

## II.   <u>Factual Background</u>

The court reviewed Alford's background in its March 31, 2020 opinion and order denying his request for a sentence reduction under § 404 of the First Step Act (ECF Nos. 1274, 1275; affirmed, ECF No. 1348).  On April 18, 2011, Alford pleaded guilty in open court to counts 1 and 2 of the superseding indictment at Crim. No. 08-374 pursuant to a written plea agreement.  (Transcript, ECF No. 1022).  Count 1 charged Alford with conspiracy to possess with intent to distribute from 2007 to October 2008:  (a) 5.0 kilograms or more of powder cocaine; and (b) 50 grams or more of crack cocaine.  Count 2 charged Alford with attempt to possess with intent to distribute 5.0 kilograms or more of powder cocaine on June 11, 2008.  In the plea agreement, he stipulated that the total drug weight of powder cocaine was between 5.0 and 15.0 kilograms.  There was no stipulation about the quantity of crack cocaine.  The government filed a § 851 information of a prior felony drug conviction as a basis to increase the statutory penalties.

Based on the amount of powder cocaine, Alford faced a statutory mandatory minimum term of imprisonment of 20 years at each count.  The presentence report was calculated based solely on the quantity of powder cocaine.  (ECF No. 619). Alford was classified as a career offender.  His advisory guideline range for a term of imprisonment, based on offense level 34 and criminal history category VI, was 262 to 327 months imprisonment.  The court adopted that calculation at the sentencing hearing.  The court varied downward and sentenced Alford to a

term of imprisonment at the statutory minimum of 240 months at each count, to run concurrent. (Transcript, ECF No. 1023).

Alford is currently incarcerated at FCI McKean, a medium security correctional institution with an adjacent minimum security satellite camp, located in Lewis Run, Pennsylvania. https://www.bop.gov/locations/institutions/mck/, last visited April 8, 2021.   There are 990 inmates at the facility. The Bureau of Prisons ("BOP") website reflected that on April 21, 2021, there was 1 inmate and 0 staff members with active cases of COVID-19. https://www.bop.gov/coronavirus/index.jsp, last visited April 21, 2021.   Alford has been in custody for more than 12 years.  His projected release date, with good time credits, is May 8, 2026.  He is 43 years old.

Alford submitted medical records with his pro se motion in September 2020 (ECF No. 1298-1).  On December 6, 2017, Alford's blood pressure was 144/84 and he was counseled about diet and exercise.  Id. at 10.  An encounter in January 2018 reflected a general adult examination with "no abnormal findings," although Alford's HgA1c was 5.8% and they discussed pre-diabetes,[1] and he was slightly anemic.  Id. at 6.  Alford's Body Mass Index ("BMI") was 30.3.[2] Id. at 2.  The most recent medical records were from August 2018.  Alford's Reentry Plan, dated November 19, 2019, noted that he was on regular duty with no medical restrictions (ECF No. 1298-3 at 8).

---

[1] A normal A1c level is below 5.7%, a level of 5.7% to 6.4% indicates **prediabetes**, and a level of 6.5% or more indicates diabetes.  https://www.cdc.gov/diabetes/managing/managing-blood-sugar/a1c.html#:~:text=A%20normal%20A1C%20level%20is,for%20developing%20type%202%20diabetes, last visited April 9, 2021.
[2] BMI provides a rough estimate of body fat simply by comparing height and weight. https://www.nhlbi.nih.gov/health/educational/lose_wt/bmitools.htm (last visited Sept. 28, 2020).  It may overestimate body fat in athletes and others who have a muscular build.  Id.  Individuals with obesity are at higher risk of having a severe case of COVID-19, although a person with a BMI of 48 (i.e., morbidly obese), poses greater concern than a person with a BMI of 30.3 (i.e., slightly obese), like Alford.  United States v. Grasha, No. 18-325, 2020 WL 5747829 at *4 (W.D. Pa. Sept. 24, 2020).

In the initial counseled filing (ECF No. 1333), Alford's attorney contended there were periods when Alford's hypertension and high blood pressure was unmanageable despite medication (ECF No. 1333 at 10), but did not provide supporting medical documentation. The initial expert report from Dr. Smith (ECF No. 1337), stated that Dr. Smith reviewed Alford's medical records through November 2020. The only preexisting medical condition identified by Dr. Smith in his initial report as posing an increased risk of serious harm to Alford from the COVID-19 virus was hypertension, defined as blood pressure over 130 systolic or 80 diastolic (ECF No. 1337 at 7). In his supplemental report, Dr. Smith also referenced obesity, ever having smoked, prediabetes and being male as risk factors (ECF No. 1351-1 at 7).

Alford was infected by COVID-19 in January 2021. Alford did not supplement his medical records to reflect his reaction to the COVID-19 virus or any lingering symptoms. Dr. Smith's supplemental report (ECF No. 1351-1) recognized that Alford was infected with the COVID-19 virus, but did not discuss his reaction, lingering symptoms or his individualized risk of reinfection. As set forth in counsel's filing, Alford was the sickest he felt in his entire life; lost his sense of smell on January 24, 2021; had a severe cough and chest pains; lost consciousness on January 26, 2021; and could not leave his bed for two days (ECF No. 1351 at 6). Alford told counsel that "[a]fter recovering," he continues to experience lingering chest pain, feels like his circulation is cut off, has trouble breathing, feels something moving around in his chest when he coughs, his legs are sore and swollen, and his entire body aches (ECF No. 1351 at 6).[3]

---

[3] Although statements made in briefs "are not evidence and cannot by themselves create a factual dispute," *see Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109–10 (3d Cir. 1985), the court will assume the veracity of Alford's symptoms and existence of his preexisting medical conditions for the purposes of resolving the pending motions.

In his supplemental report in this case, Dr. Smith opined, as relevant to the pending motion:  (1) the possibility of Alford being infected with the same strain or a variant of the COVID-19 virus is probable; and (2) "Clinical experience is simply inadequate at this time to predict the severity of reinfection."  ECF No. 1351-1 at 8.

III.   **Legal Analysis**

   A.  **Exhaustion of Administrative Remedies**

The government contends that Alford failed to exhaust his administrative remedies.  The court disagrees.  On June 23, 2020, Alford completed a form to be considered for compassionate release (ECF No. 1298-4 at 3).  On the form, Alford sought compassionate release due to his "debilitated medical conditions" of diabetes and anemia, and wrote:  "Defendant's compromised immune system, **taken in concert with the COVID-19 public health crisis**, constitute[s] an extraordinary and compelling reason to modify [ ] Defendant's sentence."  Id. (emphasis added).

The government argues, relying United States v. Valenta, Crim. No. 15-161, 2020 WL 1689786 (W.D. Pa. Apr. 7, 2020), that Alford did not exhaust his administrative remedies because his requests to the warden did not specifically mention all the medical conditions which he now asserts as a basis for relief in this court.  The government's contention that Alford did not mention COVID-19 at all is simply wrong, as demonstrated by the quotation above. The government's reliance on Valenta is misplaced.  In that decision, the court concluded that the BOP "could not have reasonably known about COVID-19" when it received the defendant's request on January 7, 2020, because the existence of the pandemic was not known at that time. The United States government announced the formation of a COVID-19 task force on January 29, 2020, and the World Health Organization declared a global health emergency on January 30,

2020.

In this case, Alford's request to the warden occurred in June 2020, when the existence of the COVID-19 pandemic was well-known.  In June 2020, an inmate seeking compassionate release due to his debilitated medical condition, in concert with the COVID-19 pandemic, fairly puts the BOP on notice of the basis for his request.  Alford cited his diabetes and anemia; it was not necessary for him to recite every aspect of his medical history. United States v. Solomon, No. CR 05-350, 2020 WL 5231326, at *2 n.3 (W.D. Pa. Sept. 2, 2020) (citing United States v. Davidson, Nos. 2:16-cr-00139-2 & 2:17-cr-00334, 2020 WL 4877255, at *10 (W.D. Pa. Aug. 20, 2020) ("it would be reasonable to conclude in Defendant's case that the BOP was well aware of the COVID-19 crisis and that her request was, at least partially, related to same.").  The warden's denial letter of July 22, 2020, reflects that the BOP did, in fact, consider Alford's medical conditions and susceptibility to the COVID-19 virus (ECF No. 1298-4 at 5). The court concludes that Alford exhausted his administrative remedies.

### B.  Substantive Law on Reduction of Sentences

A district court has only *limited* authority to "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); United States v. Savani, 733 F.3d 56, 60 (3d Cir. 2013). The Third Circuit Court of Appeals has recognized that Congress enacted exceptions to this "general rule of finality" in 18 U.S.C. § 3582(c)(1). United States v. Easter, 975 F.3d 318, 323 (3d Cir. 2020) (explaining that "[s]entence modifications under § 3582(c) constitute 'exception[s] to the general rule of finality' of sentences") (quoting Dillon v. United States, 560 U.S. 817, 824 (2010)).

Section 3582(c)(1)(A) provides:

**(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—

> (1) in any case--
>
>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>>
>>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>>
>>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>>>
>>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A). The foregoing statutory provision sets forth a *three-part analysis* for district courts to utilize to resolve a motion for compassionate release. The Third Circuit Court of Appeals has instructed that pursuant to § 3582(c)(1)(A), "a district court 'may reduce [a federal inmate's] term of imprisonment' and 'impose a term of probation or supervised release … if it finds that … extraordinary and compelling reasons warrant such a reduction.'" United States v. Pawlowski, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). "[B]efore granting compassionate release," however, "a district court must 'consider[] the factors set forth

in [18 U.S.C. §] 3553(a) to the extent that they are applicable."[4] Id. (quoting 18 U.S.C. § 3582(c)(1)(A)). The court must also consider whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission, 18 U.S.C. § 3582(c)(1)(A). United States v. Doe, No. 20-2650, 2020 WL 6328203, at *1, n.2 (3d Cir. Oct. 29, 2020).

Based upon the foregoing, to grant Alford compassionate release under § 3582(c)(1)(A), the court must analyze whether: (1) extraordinary and compelling reasons exist for his release; (2) compassionate release is warranted in consideration of the § 3553(a) factors; and (3) compassionate release is consistent with applicable policy statements issued by the Sentencing Commission.

Alford bears the burden of proof by a preponderance of the evidence to show that he is entitled to compassionate release. United States v. Smith, No. CR 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020) (citing United States v. Adeyemi, No. CR 06-124, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020)). Courts have held that to satisfy this burden, a movant must produce *evidence* to the court. See e.g., United States v. Matthews, Crim. Action No. 09-612-1, 2020 WL 5217132, at *6 (E.D. Pa. Sept. 1, 2020); United States v. Brunetti, Crim. Action

---

[4]     The factors set forth in 18 U.S.C. § 3553(a) are:

– the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);

– the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);

– the sentencing range established by the Sentencing Commission, § 3553(a)(4);

– any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5);

– the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and

– the need to provide restitution to any victims of the offense, § 3553(a)(7).

No. 2020 WL 4516541, at *6 (E.D. Pa. July 31, 2020); <u>United States v. Richardson</u>, Crim. No. 18-507, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020).  As noted above, Alford provided little in the way of medical evidence, particularly with respect to his reaction to the COVID-19 virus, his lingering symptoms and his risk of reinfection.

### C.  Extraordinary and Compelling Reasons

Prior to the enactment of the First Step Act on December 21, 2018, § 3582(c)(1)(A) provided that only the Director of the BOP could file a motion for a sentence reduction under § 3582(c)(1)(A)(i). <u>Ray v. Finley</u>, No. 3:19-CV-0988, 2019 WL 5569616, at *3 (M.D. Pa. Oct. 29, 2019). The First Step Act amended § 3582(c)(1)(A), which now provides that "a motion for reduction in sentence may be filed by either the Director of the BOP or a federal inmate" after the federal inmate exhausts administrative remedies. <u>Id.</u>

"Congress did not define 'extraordinary and compelling reasons' except to provide 'rehabilitation…alone' does not suffice." <u>Adeyemi</u>, 2020 WL 3642478, at *7 (quoting 28 U.S.C. § 994(t)). The Third Circuit Court of Appeals has explained that "compelling and extraordinary" reasons for the reduction of a sentence are "defined by the commentary to policy statement U.S.S.G. § 1B1.13." <u>Handerhan</u>, 789 F. App'x at 925 (citing <u>United States v. Barberena</u>, 694 F.3d 514, 521 n.10 (3d Cir. 2012)). "That commentary currently lists four categories of such reasons: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) 'other reasons' as determined by the Director of the Bureau of Prisons." <u>Id.</u> (quoting U.S.S.G. § 1B1.13 cmt. n.1.). The court in <u>Adeyemi</u> explained the first three categories as follows:

> The first category includes incarcerated persons suffering from terminal illnesses, such as metastatic solid-tumor cancer, amyotrophic lateral sclerosis, end-stage organ disease, and advanced dementia, or those suffering from medical conditions, impairments, or deteriorations due to age that "substantially

> diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."…The second category includes incarcerated persons who are at least sixty-five years old, experience a serious deterioration in physical or mental health because of the aging process; and have served at least ten years or seventy-five percent of their term of imprisonment, whichever is less….The third extraordinary and compelling reason may arise where the primary caregiver of the incarcerated person's minor child or children died or became incapacitated or where the incarcerated person's spouse became incapacitated and he is the only available caregiver for the spouse.

Adeyemi, 2020 WL 3642478, at *7 (citing U.S.S.G. § 1B1.13 cmt. n.1(A)-(C)).

The court of appeals in Handerhan explained that "[t]he Sentencing Commission has not yet amended § 1B1.13 or its commentary to account for the First Step Act…[and] the District Courts are divided on whether and how to apply the catch-all 'other reasons' category and its reference to determinations made by the Director." Handerhan, 789 F. App'x. at 925 n.1 (citing United States v. Fox, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *2 (D. Me. July 11, 2019)). While U.S.S.G. § 1B1.13 was not updated to reflect the First Step Act amendments, the Commission's policy statement "does not constrain a court's independent assessment about whether 'extraordinary and compelling reasons' warrant a sentence reductions under § 3582(c)(1)(A)." United States v. Somerville, No. 2:12-CR-225-NR, 2020 WL 2781585, at *6-7 (W.D. Pa. May 29, 2020) (holding the court has authority to independently assess whether there are "extraordinary and compelling reasons" to reduce a defendant's sentence).[5]

[5] This conclusion is shared by a "vast majority" of courts that considered "whether courts may independently evaluate extraordinary and compelling reasons to reduce sentences" under the catchall provision of U.S.S.G. § 1B1.13. Adeyemi, 2020 WL 3642478, at *10 (collecting decisions); United States v. Andrews, Crim. Action No. 05-280-02, 2020 WL 4812626, at *3 (E.D. Pa. Aug. 19, 2020) (finding that district courts "overwhelmingly conclude that a court can make an independent determination of what constitutes extraordinary and compelling reasons"). For example, the court in Adeyemi explained that the directive in U.S.S.G. § 1B1.13 that the Director of the BOP determines whether "other reasons" exist for the compassionate release of a defendant is not authoritative because it contradicts with the plain language of 18 U.S.C. § 3582(c)(1)(A), which requires the court to find extraordinary and compelling reasons for a defendant's release. Adeyemi, 2020 WL 3642478, at *14-15 (citing United States v. LaBonte, 520 U.S. 751, 764 (1997); Stinson v. United States, 508 U.S. 36, 37 (1993)).

"The starting point in discerning congressional intent is the existing statutory text[.]" Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004). "Extraordinary and compelling" is not defined by statute, and, therefore, the court must give the terms their "'ordinary meaning.'" United States v. Diallo, 575 F.3d 252, 256 (3d Cir. 2009) (quoting Moskal v. United States, 498 U.S. 103, 108 (1990)). The court in Somerville explained:

> The word "extraordinary" is commonly understood to mean "going beyond what is usual, regular, or customary," or "exceptional to a very marked extent." *Extraordinary*, Merriam-Webster Dictionary (2020); see also *Extraordinary*, Black's Law Dictionary (11th ed. 2019) ("Beyond what is usual, customary, regular, or common.").

> The word "compelling" means "forceful," "demanding attention," or "convincing." *Compelling*, Merriam-Webster Dictionary (2020); see also *Compelling Need*, Black's Law Dictionary (11th ed. 2019) ("A need so great that irreparable harm or injustice would result if it is not met.").

> Thus, at a minimum, § 3582(c)(1)(A)(i) requires a justification for release that is both unusual (i.e., unique to the inmate, and beyond the ordinary hardship of prison) and significant (i.e., serious enough to make release appropriate).

Somerville, 2020 WL 2781585, at *7.

Alford argued in his motion for compassionate release that he should be granted compassionate release based on: (1) his hypertension, obesity, prediabetes, history of smoking and being male, which place him at high risk of a severe reaction to the COVID-19 virus; and (2) his rehabilitation while incarcerated and offer of full-time employment upon release (ECF No. 1334-4). As discussed above, Alford—after he filed his motion—contracted COVID-19. Alford

---

The issue is pending before the Third Circuit Court of Appeals in *United States v. Andrews*, No. 20-2768, in which oral argument was held on March 16, 2021. United States v. Avery, No. CR 04-243-01, 2021 WL 949482, at *1 (E.D. Pa. Mar. 12, 2021). The court in Avery explained:
> The two issues in Andrews are whether district courts have the authority to identify other extraordinary and compelling reasons supporting a sentence reduction; and whether the First Step Act's change to the stacking penalties in Section 924(c) constitutes an extraordinary and compelling reason.

Id. at *1 n.1.

now argues that he should be granted compassionate release because his health conditions continue to place him at serious risk of grave illness or death if he suffers a *reinfection* with COVID-19. As discussed above, Alford has the burden of proof to introduce evidence to show that extraordinary and compelling circumstances warrant his compassionate release.

### i. Alford's risk from COVID-19 and his health conditions

The court in <u>Somerville</u> considered decisions from federal courts across the United States in which incarcerated defendants sought compassionate release in light of the COVID-19 pandemic and established a two-part analysis for courts to use to determine whether the COVID-19 pandemic represents extraordinary and compelling reasons for a defendant's release. <u>Id.</u> at *4. The court explained:

> While the Third Circuit has not articulated a definitive standard to be applied to § 3582(c) motions in this context, it has observed generally that the mere "existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner[.]" <u>United States v. Roeder</u>, 807 Fed.Appx. 157, 161 n.16 (3d Cir. 2020). From that, the Court infers that a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a ***uniquely high risk*** of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held.

<u>Id.</u> (emphasis added). The two-part test needs to be modified in light of Alford's already having been infected by COVID-19 and the risks of reinfection.  The issues, in light of Alford's medical conditions and the COVID-19 situation at FCI McKean, are whether Alford showed: (1) a uniquely high risk of grave illness or death if <u>*re*</u>infected by COVID-19; and (2) an actual, non-speculative risk that he will be <u>*re*</u>infected by COVID-19 at FCI-McKean. <u>See</u> <u>United States v. Doe</u>, 833 F. App'x 366, 367 (3d Cir. 2020) (per curiam) (affirming the district court's decision denying the defendant's motion for compassionate release because despite the defendant's health

conditions, his risk of contracting COVID-19 at his federal institution was speculative).

As discussed above, Dr. Smith opined in his reports that Alford's hypertension, obesity, prediabetes, history of smoking and male gender place him at higher risk of death or serious illness if he recontracts COVID-19, and that risk cannot be ameliorated within the congregate setting of a prison.

The most recent guidance from the Centers for Disease Control ("CDC") states: "possibly high blood pressure (hypertension) **can make you more likely** to get severely ill from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, last visited April 9, 2021. Obesity is identified as a factor whose risk "increases sharply with elevated BMI." Id. Prediabetes is not listed as a risk factor. Id. Being a current or former cigarette smoker **can make you more likely** to get severely ill from COVID-19. Id. Being male is not identified as a risk factor by the CDC. Id. In sum, despite the somewhat scanty medical record, the court concludes that Alford satisfied his burden to show that he has underlying medical conditions that placed him at uniquely high risk of suffering grave illness or death if he contracted COVID-19. He did, however, contract COVID-19, survived the infection, and there is no evidence he suffered grave illness. There is no evidence in the record about whether he faces a similar risk of grave illness or death if he is *reinfected.*

Alford must also show that there exists an actual, non-speculative risk of exposure to COVID-19 at FCI McKean and that he is likely to be reinfected despite recovering after contracting the COVID-19 virus in January 2021. The CDC reports: "Cases of reinfection with COVID-19 have been reported, but remain rare." https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html, last visited April 16, 2021. In light of that report, reinfection with the COVID-19 virus is possible, but not a likely occurrence. There is only a minimal risk

that Alford will be exposed to the COVID-19 virus, as there is only 1 active case at FCI McKean.  There is no evidence that even if he is exposed, Alford is likely to be reinfected. Under those circumstances, Alford's health conditions and the COVID-19 pandemic do not constitute extraordinary and compelling reasons for his compassionate release.  See United States v. Jones, No. CR 13-252, 2021 WL 1060218, at *1 (W.D. Pa. Mar. 18, 2021) (denying motion for compassionate release filed by inmate with preexisting conditions who recovered from COVID-19 infection because his risk of reinfection was speculative).

If his medical conditions or the circumstances at his place of confinement change, Alford may file a new request for compassionate release.

### ii.    Lingering symptoms from COVID-19

Alford contends, in his reply, that despite recovering from his COVID-19 infection, he continues to have chest pain, trouble breathing, a feeling of something moving in his chest when he coughs, sore and swollen legs, and entire body aches (ECF No. 1351 at 6). The CDC recognizes that some patients may have symptoms from a COVID-19 infection that can last for weeks or even months after recovery from acute illness.  Commonly reported symptoms include chest pain, shortness of breath and joint or muscle pain.  https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects.html, last visited April 12, 2021.

Alford does not contend that he is receiving inadequate medical care for his lingering symptoms.  There is no evidence in the record that the prison environment exacerbates Alford's conditions or that he is unable to engage in self-care in the correctional environment.  Alford did not provide his post-COVID-19 medical records and the supplemental report of Dr. Smith does not support compassionate release on this ground.  In sum, the court cannot find that the lingering symptoms warrant compassionate release.

### iii.    Alford's Rehabilitation while Incarcerated

Alford provided evidence to the court that he has participated in numerous educational and vocational courses while incarcerated. (ECF No. 1298-3).  He obtained his GED degree and a commercial drivers license ("CDL") and has an offer of full-time employment upon his release (ECF No. 1334-4). "Rehabilitation of the defendant alone [, however,] shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Under those circumstances, Alford's efforts to rehabilitate himself while incarcerated *are* commendable but cannot—standing alone— satisfy his burden to show his entitlement to compassionate release.  The court will consider Alford's laudable rehabilitation efforts in reweighing the § 3553(a) sentencing factors.

### iv.    Conclusion about extraordinary and compelling reasons

Considering the totality of the circumstances presented by Alford, i.e., his preexisting health conditions, his infection with the COVID-19 virus, his lingering symptoms, the current status of the pandemic at FCI McKean, and his efforts to rehabilitate himself while incarcerated, he did not satisfy his burden to show that extraordinary and compelling circumstances warrant his compassionate release. Alford's motion for compassionate release will, therefore, be denied without prejudice.

### D.  Section 3553(a) Factors

If Alford had satisfied his burden to show that extraordinary and compelling circumstances warrant his release from incarceration, the court would deny his motion for compassionate release based upon consideration of the factors set forth in 18 U.S.C. § 3553(a).[6]

---

[6]    The court recognizes that having concluded Alford did not satisfy his burden to show that extraordinary and compelling circumstances exist in this case, it need not consider the § 3553(a) factors.

Specifically, Alford committed two very serious drug offenses, has a significant criminal history, and has served far less than the statutory mandatory minimum term of imprisonment imposed upon him in this case. Under those circumstances, compassionate release is not warranted.

> ### 1. The nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1)

Alford committed very serious offenses involving large amounts of powder cocaine and crack cocaine. Alford received an enhancement as an organizer or leader in the offenses. Large-scale cocaine trafficking has devastating effects on the community. United States v. Mosqueda, Nos. 16-233 & 17-98, 2017 WL 5157847 (W.D. Pa. Nov. 7, 2017). The seriousness of the offenses is reflected by the mandatory minimum term of imprisonment of 20 years imposed by Congress at each count of conviction based on the government's filing of a § 851 Information of Alford's prior felony drug conviction.

With respect to Alford's history and characteristics, the court will consider the most up-to-date picture. See United States v. Tidwell, No. CR 94-353, 2020 WL 4504448, at *7 (E.D. Pa. Aug. 5, 2020). As noted above, Alford provided evidence of post-sentencing rehabilitation in his participation in educational and vocational training. (ECF No. 1333 at 18-19). The court acknowledges the opportunity for full-time employment, the ability to live with his mother and receive support from the reentry case manager. The court also appreciates Alford's motivation and desire to be reunited with his children and their desire to be reunited with him, as reflected in the letters to the court. The court is aware of the tragic shooting death of Alford's son, Emery

---

See United States v. Korbe, No. 2:09-CR-05-NR-1, 2020 WL 6384368, at *3 (W.D. Pa. Oct. 30, 2020) ("Because Ms. Korbe does not show the requisite extraordinary and compelling reasons here, and the Court therefore is not 'reduc[ing] the term of imprisonment,' the Court need not address the section 3553(a) considerations."); United States v. Jackson, No. CR 18-413 (KSH), 2020 WL 6391182, at *3 (D.N.J. Oct. 30, 2020) ("Under the circumstances, the Court cannot find that an extraordinary and compelling reason for reduction in Jackson's term of imprisonment has been shown. Accordingly, the Court need not reach whether the sentencing factors under 18 U.S.C. § 3553(a) favor that relief or the issue of dangerousness under 18 U.S.C. § 3142(g).").

Heard.  When imposing the original sentence, the court recognized Alford's leadership abilities, family ties, ability to do good things, and acceptance of responsibility.  Alford's rehabilitative efforts while incarcerated and the love and support from his family are commendable.  The court recognizes that the conditions of his confinement over the past year have been more onerous than anticipated due to the COVID-19 virus.

At the time Alford was originally sentenced in this case, he was classified as a career offender with a criminal history category of VI.  Alford would have been in criminal history category V without the career offender designation.  The presentence report ("PSI") (ECF No. 643) recounts a lengthy criminal history beginning at age 12, and containing incidents of violence, including shooting a person.  Alford had two prior felony drug convictions.  He committed the offenses in this case while on parole.

Despite his admirable rehabilitation efforts and family support, considering the very serious nature of Alford's offenses, his leadership in the underlying offenses of conviction, and his extensive criminal history, this factor weighs against his compassionate release.

    **2.** **The need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D)**

This court sentenced Alford to the statutory mandatory minimum term of imprisonment of 240 months at each count, to be concurrently served. The mandatory minimum reflected the government's filing of a § 851 information stating a prior conviction as a basis for increased punishment. Alford has served approximately 146 months in prison, roughly 70% of his projected term of imprisonment, assuming he receives all good time credits.   Under the circumstances of the underlying offenses of conviction, his term of

imprisonment to date would not adequately deter criminal conduct or protect the public from further crimes by Alford.

With respect to the need to provide Alford with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, Alford is encouraged to continue programming within the BOP to enhance his vocational skills and employability once he is released.

Based upon the foregoing, this factor weighs against granting Alford compassionate release.

### 3. The sentencing range established by the Sentencing Commission, § 3553(a)(4).

The sentencing range for a term of imprisonment applicable to Alford was 262 to 327 months. The court varied downward, substantially, and imposed a term of imprisonment at the statutory mandatory minimum of 240 months.  As the court observed in denying Alford's motion for relief under § 404 of the First Step Act, Alford's sentence was calculated based solely upon the amount of powder cocaine.

Alford argues strenuously that he would be subject to a different guideline range if resentenced today because: (1) under the First Step Act, the § 851 information would make the mandatory minimum 15 years, rather than 20 years; and (2) in United States v. Nasir, 982 F.3d 144 (3d Cir. 2021) (en banc), the Third Circuit Court of Appeals held that inchoate offenses, such as attempt and conspiracy, cannot serve as predicates for career offender status (ECF No. 1351 at 8-11).

These contentions lack merit.  Alford would face the same statutory mandatory minimum of 20 years at each count if resentenced today due to the amount of powder cocaine. See 21 U.S.C. §§ 841(a)(1), (b)(1)(iii), 851; PSI ¶ 59 (ECF No. 643).  As the court previously

explained, Alford is not entitled to relief (or, in the alternative, the court would decline to grant relief) under the First Step Act because Alford's sentence was not based on the amount of crack cocaine.  United States v. Alford, 839 F. App'x 761, 763 (3d Cir. 2021) (the First Step Act did not change the sentencing provisions for offenses involving powder cocaine).  In addition, Nasir is not relevant because Alford's sentence was not based upon his career offender designation under the guidelines.  Instead, the court varied downward substantially and sentenced Alford at the statutory mandatory minimum.

To the extent the court would grant Alford's motion for compassionate release, his actual prison term would result in a further downward variance from the sentencing guidelines and would be substantially below the statutory mandatory minimum sentence established by Congress. This factor, therefore, weighs against granting Alford compassionate release.

### 4. Any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5)

Pursuant to the policy statement set forth in U.S.S.G. § 1B1.13, the court must determine, among other things, that the defendant is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" to reduce the defendant's term of imprisonment. Alford presented evidence to the court about his rehabilitation efforts while incarcerated and availability of employment upon release.  The court concludes that Alford presents a danger to the community due to the nature and seriousness of his offenses and his extensive criminal history, as discussed above.[7] This factor weighs against granting compassionate release in this case.

### 5. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6)

---

[7] The court is not persuaded by the government's argument that Alford presents a danger to the community because he contracted the COVID-19 virus, given the passage of time and his recovery.

As noted above, Alford's sentence already reflects a substantial downward variance from the advisory guideline range.  A further reduction in sentence, to a term of imprisonment below the statutory mandatory minimum established by Congress, could create an unwarranted disparity with similarly situated defendants.  This factor weighs against granting compassionate release.

**6.   The need to provide restitution to any victims of the offense, § 3553(a)(7).**

Although there are many victims to large-scale cocaine trafficking, the law does not provide for restitution to those persons. This factor, therefore, is inapplicable in this case.

**7.   Conclusion about sentencing factors**

Consideration of the § 3553(a) factors counsels that compassionate release is not warranted in this case. Alford has a significant criminal history and was the leader or organizer of very serious offenses involving powder cocaine and crack cocaine.  The court varied downward and imposed the statutory mandatory minimum sentence.

Based upon the foregoing, Alford's sentence is sufficient, but not greater than necessary, to fulfill the purposes of sentencing. The court would, therefore, deny Alford's motion for compassionate release on this alternative basis, albeit without prejudice.

**IV.   Conclusion**

Once a court imposes a sentence and it becomes final, it may not be modified unless an exception to the rule of finality applies in the case. Here, Alford did not satisfy his burden under § 3582(c)(1)(A) to introduce evidence to show that extraordinary **and** compelling reasons warrant his premature release from imprisonment and that consideration of the § 3553(a) factors

warrant his premature release from imprisonment.  Alford contracted COVID-19 while

incarcerated, but currently there is only 1 inmate with the infection at FCI McKean. While it may

be *possible* that Alford may be reinfected with COVID-19 or a variant of the virus, there is no

evidence of record that Alford is likely to be reinfected or is likely to suffer severe symptoms if

he is reinfected.


His motions for compassionate release (ECF Nos. 1298, 1333, 1351) will, therefore, be

denied. The denial is without prejudice and Alford may file a new request if the circumstances at

his place of incarceration or his medical conditions change.

An appropriate order will be entered.




Dated:  April 21, 2021

                                        /s/ Joy Flowers Conti
                                        Joy Flowers Conti
                                        Senior United States District Court Judge